**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **RANDALL J. KEYSTONE,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:15cv00553 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **G.M. HINKLE, et al.,** | ) | By: PAMELA MEADE SARGENT |
| Defendants | ) | United States Magistrate Judge |

The pro se plaintiff, Randall J. Keystone, ("Keystone"), an inmate incarcerated at Red Onion State Prison, ("Red Onion"), brings this civil rights action pursuant to 42 U.S.C. § 1983, against the defendants, G.M. Hinkle, Regional Administrator; Mr. Day, Regional Sanitation Manager; Warden Mathena; W. Swiney, Unit Manager; S. Franklin, Building Lieutenant; and Lee Taylor, HVAC Manager at Red Onion.[1] Keystone has filed two motions requesting that preliminary injunctive relief be entered. (Docket Item Nos. 17, 33, ("Motions.")) An evidentiary hearing was held on the Motions on July 7, 2016. At the conclusion of this hearing, the court ordered counsel for the defendants to produce Keystone's requested medical files and any HVAC inspection records within 7 days and gave Keystone 14 days from the date of production to file any of these documents he wished with the court. Defense counsel provided these records, and the deadline for Keystone to file any documents with the court has now passed. For the reasons discussed below, I recommend that the court deny Keystone's Motions requesting preliminary injunctive relief.

[1] Mr. Day and A. Taylor are both now deceased, and Lee Taylor has been substituted for A. Taylor.

*I. Facts*

In his Complaint, (Docket Item No. 1), Keystone claims that the defendants have violated his Eighth Amendment rights based on prison conditions. Specifically, he claims that the defendants have failed to provide sufficient ventilation in the C Building by failing to adequately inspect and clean the ventilation system there, which has resulted in several medical symptoms and an exacerbation of his chronic obstructive pulmonary disease, ("COPD"). In particular, Keystone alleges that he has suffered difficulty breathing, headaches and sinus infections, among other things. He further alleges that the defendants retaliated against him in various ways for filing this lawsuit. Specifically, Keystone claims that the defendants issued an institutional charge against him for refusing to move cells, resulting in the loss of 90 days of good time credit. He further alleges that the defendants moved him out of the C6 Housing Unit so he could not speak with inmates he wished to call as witnesses in his lawsuit. He claims that the defendants also intentionally call him by his former last name, and they mispronounce it, which is offensive to him.

In addition to monetary relief, Keystone seeks injunctive relief requiring the defendants to immediately vacuum and sanitize and repair all shower and cell vents, to repair loose ductwork and to change all air filters at Red Onion. He further requests that the court order Red Onion to conduct thorough quarterly vent inspections and cleaning and order that some windows be used to provide fresh air or to induct more fresh air and that exhaust fans be used during all incidents of OC pepper spray use and after all incidents in which fecal matter is released into the air. (Complaint at 14.) In the Motions, Keystone also seeks preliminary injunctive relief requiring Red Onion officials to stop violating his First Amendment rights by

retaliating against him, and he requests that the court order that the retaliatory institutional charge be dismissed, that 90 days of good time credit be restored and that he be moved back to his prior C6 cell block.[2] Keystone further requests that the vents be vacuumed, cleaned and sanitized, that the shower vents and cell vents be repaired, that the filters be changed more frequently, that exhaust fans be turned on prior to the spraying of OC pepper spray and that round hatches replace the duct tape that is currently on the vents.

According to Keystone's testimony, he has been housed at Red Onion for seven years, since December 2002, and was diagnosed with COPD in 2006 by Dr. H. Smith, an institutional physician. Keystone alleges that Dr. Smith advised him that this condition was due to pollen and dust in the vents. Prior to his incarceration at Red Onion, Keystone claims he had no respiratory problems, despite smoking previously. Keystone stated that he had not smoked since 2008. Keystone testified at the hearing that he currently is housed in the C Building, in cell C-102, and has been housed continuously in the C Building for the previous three and one-half years. Keystone further testified that, in 2008, he was diagnosed with a deviated septum.

According to Keystone, he understands that the ventilation system at Red Onion utilizes 25 percent fresh air from the outside and 75 percent recycled air. He also understands that the vents are supposed to be inspected quarterly and cleaned annually. However, Keystone stated his belief that less than 25 percent

[2] While one of the Motions, (Docket Item No. 17), did not specify the injunctive relief requested, Keystone clarified his requests at the July 7 hearing. The other motion, (Docket Item No. 33), asserted that VDOC employees were harassing and retaliating against Keystone as a result of his filing this lawsuit against the defendants, yet Keystone offered no evidence regarding these claims at the July 7 hearing.

fresh air is coming into the system and that bacteria and germs are being circulated throughout the building. He conceded that he did not know how often the filters were replaced, but that dust could be visualized in the air in the C Building, requiring him to flush his eyes and nostrils on a daily basis. Keystone testified that the shower vents in the C Building do not function properly, creating a warm, wet, germ-laden environment. Particularly, he stated that a fan is supposed to run in the vents, but they are not working. He stated that he previously was housed in a cell above the showers for a year and a half, during which time he coughed up blood and experienced chest pains, and he was placed on an inhaler during this time.

Keystone testified that fecal matter released into the air further contributed to the poor air quality in the C Building. He reported that some inmates collect urine and feces in bottles to squirt on other inmates and Red Onion staff and that some inmates smear feces inside their cells, including in the vents, and even onto themselves. Keystone stated that some inmates do not flush their toilets, and he recounted instances of inmates' toilets breaking and not being repaired for a week. He alleged that, when an inmate uses the toilet in the cell next to him, he begins coughing. Adding to the poor air quality at Red Onion, Keystone stated, was the officers' use of OC pepper spray. More specifically, he alleged that the officers used more OC pepper spray than allowed, and it circulated through all of the cells because they would not turn the exhaust fans on for 10 to 15 minutes afterwards. Keystone alleged that these fans should be turned on prior to such use of OC pepper spray. Lastly, he stated that some inmates in the C Building do not bathe regularly or at all, further contributing to the poor air quality.

Keystone testified that he had been sick on numerous occasions with recurring sinus infections and that he suffered from headaches, coughing, sneezing

and eye problems. He estimated that he had requested sick call 20 times over the previous three or four years. Keystone testified that inmates may request sick call during either of the two daily pill passes performed by nurses at Red Onion. He reported using Nasacort previously, which helped, but the institution stopped providing it. Keystone testified that he used Albuterol to open his airways to allow him to cough up mucous caused by certain foods, dust and pollen, stress and changes in air temperature. He reported a burning in his nostrils, throat and lungs for a couple of weeks prior to the hearing. Keystone testified that he last saw a doctor on June 7, 2016, with complaints of bladder problems, knee problems and becoming ill after eating fish.

Keystone conceded that the ventilation system was vacuumed in June 2016, but it was not sanitized. He stated that, after this cleaning, trash remained in the vents, and dust could be visualized in the air. Keystone testified that he filed a grievance in October 2013 concerning the ventilation system in the C Building after OC pepper spray circulated throughout the building. At that time, he was housed either in cell C-214 or 217. He claims to have exhausted his administrative remedies on this issue. Keystone stated that he left the C2 Housing Unit on October 11, 2013, and has not returned to that Housing Unit. On October 11, 2013, he was sent to the C1 Housing Unit, where he remained until March 25, 2014, at which time he was moved to the C6 Housing Unit. Keystone stayed there until April 24, 2014, at which time he moved to his current cell in the C1 Housing Unit.

Keystone testified that he had previously participated in a step-down program at Red Onion, but did not complete it. This program allows an inmate in segregation to earn a return to general population and change classification from a Level 6 offender to a Level 5 offender. He has again been offered the opportunity

to participate in this step-down program, but he has refused to do so. Keystone also has been offered the opportunity to participate in a re-entry program, which would result in him being moved to the D Building, but he refused to participate in this program because he would come into contact with the K-9 units more often, as they are used in the yard as inmates are escorted to the Chow Hall. Currently, Keystone receives all of his meals in his cell, as do all inmates housed in the C Building. Keystone reported that he had been attacked by a dog during childhood, and police dogs caused flashbacks. He further testified that if he were moved into general population in a different building, he would be "stuck" in a double cell.

In support of his allegations, Keystone called three inmate witnesses to testify at the July 7 hearing: Abdul Hamza Wali Muhammad, Derrick Lynn Bratcher and Stacey Newbill, all inmates housed in the C Building at Red Onion. These witnesses testified that the air quality in the C Building is poor due to inadequate ventilation, the presence of urine and fecal matter, the use of OC pepper spray on inmates without turning the exhaust fans on first and the use of OC pepper spray directly into the vents. They further testified that the exhaust fans in the showers do not work properly, resulting in a warm, wet and bacteria-filled environment and that large amounts of lint/dust come out of the vents daily. They stated that the vents were merely vacuumed, not sanitized, in June 2016 and that trash remained in the vents. Two of these witnesses testified that they experienced negative health effects as a result of the inadequate ventilation. Specifically, Muhammad, #1005782, testified the conditions exacerbated his asthma, that he suffered migraines, that he coughed up blood and had chest pains when OC pepper spray was used and that he had experienced a burning and scratchy throat for a couple of days prior to the hearing. Likewise, Newbill, #1172281, testified that he experienced headaches, had difficulty breathing in his cell and in the shower,

Case 7:15-cv-00553-NKM-PMS Document 58 Filed 08/12/16 Page 6 of 18 Pageid#: 414

experienced chest pains when OC pepper spray was used and had a burning sensation in his nose, lungs and throat. However, he conceded that he had not seen a doctor regarding his difficulty breathing. Bratcher, #1183091, on the other hand, admitted that he did not suffer from any health problems and had not even had a cold "in a while."

Amee Duncan, the C Building Unit Manager since February 11, 2016, also testified at the July 7 hearing. Prior to becoming Unit Manager, Duncan was a counselor in the C Building, and Keystone was part of her caseload. She stated that she performs rounds in the C Building on a near daily basis and that she speaks with Keystone at least three times weekly. Duncan testified that she had never observed him to be short of breath when speaking with him, and she knew that he exercised. She further testified that Keystone never spoke with her about the ventilation system until after the vents were cleaned on June 11-12, 2016, at which time he expressed concern that the vents were not cleaned adequately, noting that trash remained in the vents. However, he did not complain of the ventilation system making him sick or exacerbating any existing health problems, according to Duncan. Duncan stated that Keystone had never made her aware of any health concerns and that no other inmates had complained to her concerning the ventilation system. She testified that she had personally worked in the C Building for two and a half years, and there were no problems with the air there. Duncan testified that when an offender leaves his cell, walkthroughs are conducted, and cell inspections are conducted weekly to search for contraband and to check the ventilation in the cells. Duncan stated if the odor of feces is detected, the offender will be moved, and the cell will be cleaned. She stated that, if feces is found within the vents, they are cleaned. She testified, however, that there is no policy governing the frequency of vent cleaning.

Duncan testified that the C Building sometimes smells due to inmates smearing feces. When this occurs, Duncan stated that it is cleaned immediately. She stated that the offending inmate is given the opportunity to clean the feces, and if he will not do so, there are specially trained inmates who clean it. She testified that there are even certain cells reserved for inmates who tend to smear or otherwise spread fecal matter, some of which are in the C2 Housing Unit, and some of which are in the C4 Housing Unit. Duncan testified that these cells are on a different ventilation system which is connected directly to the outside. Duncan testified that she is not responsible for overseeing HVAC or ventilation issues. However, if she became aware of a problem in these areas, she would submit a work order to the Maintenance Department.

Duncan testified that W. Swiney, who is a named defendant in this case, was the previous C Building Unit Manager, but he had not been there since she took the position in February 2016. She stated that W. Swiney now is the Unit Manager of D Building. Duncan further testified that S. Franklin, a former Building Lieutenant in the C Building and another named defendant, now is a Captain, not assigned to any housing unit. She testified that G.M. Hinkle, the Regional Administrator and another named defendant, has no authority to order repairs to the ventilation system at Red Onion and that the fourth named defendant, Warden Mathena, no longer is the Warden at Red Onion.

Jeffrey Bolling, the HVAC Co-Manager at Red Onion for the last five years, also testified at the July 7 hearing. Bolling clarified that defendant Lee Taylor also is an HVAC Co-Manager. According to Bolling, he and his department perform preventive maintenance, such as filter replacement and inspection of shower exhaust fans, as well as repairs and some installation. He stated that he and his

department do not perform any cleaning of the ventilation system. He stated that there are six housing pods in the C Building. There is one rooftop unit for C1 and one for C6, one unit for C2 and C3 combined and one unit for C4 and C5 combined, none of which are connected. He testified that he is called to the C Building routinely, and he checks each of these units approximately once every couple of weeks. Bolling testified that the filters are replaced, on average, once every three months. He stated that these filters, which are high capacity industrial-grade, remove particulates from the air before they pass through the units, but they do not catch odors or germs. According to Bolling, the fans run continuously, 24 hours a day, but the exhaust fans must be turned on to exhaust OC pepper spray. He described his repair work to include issues with low air flow and noises within the system. He stated that if there was a complaint of low air flow, he would check all area cells for issues. Bolling testified that complaints are usually brought to his attention through work orders, offender requests or grievances or word of mouth from other maintenance workers.

Bolling testified that the ventilation system at Red Onion utilizes 20 to 25 percent fresh air and 75 to 80 percent recycled air at all times, noting that a typical federal building utilizes only 10 to 15 percent fresh air. He stated that there are five or six special cells in the C Building that are exhausted directly to the outside. Bolling testified that an air flow study was conducted by an outside consulting agency in June 2015, finding no issues with the air flow in the C Building. Bolling stated that he was not aware of any issues with the ventilation system or the air quality in the C Building, nor had he noticed any odors in there or heard any other inmates complain about the air quality.

Shannon Woods, R.N., a charge nurse at Red Onion, also testified at the July 7 hearing. Woods explained that Keystone's medical records going back to January 2015 revealed that, with the exception of two months, he saw a doctor between once and three times monthly. Over the last year, Keystone's medical complaints included heartburn, arthritis, urinary tract infection, ear infection, constipation and sinus-related issues. Woods testified that many inmates suffer from COPD, but Keystone did not carry a COPD or emphysema diagnosis, whose symptoms include excessive sputum, difficulty breathing, a barrel chest and low oxygen saturation levels. Woods testified that Keystone's oxygen saturation levels were between 97 and 99, which is "really good," noting that individuals with COPD typically have oxygen saturation levels between 90 and 93. She further testified that lung x-rays from April 30, 2014, showed no acute cardiopulmonary disease, but she conceded that she did not know if COPD would be visible on x-ray. Woods explained that an inmate can get on the list to see the doctor by putting in a sick call request. She stated that nurses perform pill pass twice daily, at which time the request may be given to the nurse. The inmate will be seen by a nurse the following day and evaluated. If the nurse determines that the inmate needs to be evaluated by a doctor, he will be seen by a doctor within a week.

According to Woods, Keystone's medical records reveal that, on May 3, 2016, he saw the doctor with complaints of painful urination. He received Bactrim for a urinary tract infection, ("UTI"). On May 31, 2016, Keystone again saw the doctor for a follow up on the UTI. He complained of constipation and sinus issues. He received Metamucil, Colace and nasal spray, and sinus x-rays were ordered. On June 7, 2016, Keystone complained of knee pain, a fish allergy and vitamin deficiencies. He requested a "no kneel" pass, and an x-ray of the knee was ordered. June 3, 2016, x-rays of the sinuses showed a mildly deviated septum, but no acute

bony abnormality. Chronic sinusitis was suspected. In 2015, Keystone saw the doctor on multiple occasions with complaints including hemorrhoids, asthma, a "spot" on his arm, a fish allergy, sinus issues and sputum, constipation, elbow pain, an ear infection and dry eyes. Woods testified that asthma and COPD are two different diagnoses. According to Woods, she did not hear many complaints from inmates of respiratory problems, and she had heard no complaints of "bad air" at Red Onion.

*II. Analysis*

The Eighth Amendment to the U.S. Constitution not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment also imposes a duty on prison officials to provide humane conditions of confinement, including ensuring that inmates receive adequate food, clothing, shelter and medical care. *See Helling v. McKinney*, 509 U.S. 25, 31-32 (1993); *Washington v. Harper*, 494 U.S. 210, 225 (1990); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Also, under the Eighth Amendment, officials may not house prisoners under conditions that deprive them of such basic human needs as that of reasonable safety, adequate physical space and the need for some degree of ventilation and fresh air. *See Brown v. Mitchell*, 327 F. Supp. 2d 615, 631 (E.D. Va. 2004) (citing *Helling*, 509 U.S. at 33; *Wilson v. Seiter*, 501 U.S. 294, 300 (1991); *Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982); *Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir. 1993); *Williams v. Griffin*, 952 F.2d 820, 826 (4th Cir. 1991). If the responsible prison official becomes aware that conditions at his facility are depriving inmates of one or more basic human rights, that official must take corrective action. *See*

*Brown*, 327 F. Supp. 2d at 650 (citing *Wilson*, 501 U.S. at 300; *Strickler*, 989 F.2d at 1382; *Williams*, 952 F.2d at 826)).

Prison officials violate the Eighth Amendment only when two requirements are met. First, the alleged deprivation must be, objectively, "sufficiently serious." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298). In the context of a conditions of confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler*, 989 F.2d at 1381), or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. *See Helling*, 509 U.S. at 36. The courts are guided by contemporary standards of decency in deciding whether the harm alleged by an inmate is sufficiently serious to satisfy the Eighth Amendment's objective component. *See Shakka*, 71 F.3d at 166 (citing *Hudson*, 503 U.S. at 8; *Estelle*, 429 U.S. at 102). However, the Eighth Amendment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measures of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (citations and internal quotation marks omitted). In fact, the "ordinary discomfort accompanying prison life" is part of an inmate's punishment. *Shakka*, 71 F.3d at 166 (citing *Hudson*, 503 U.S. at 9). That being the case, only extreme deprivations satisfy the objective component of an Eighth Amendment claim. *See Shakka*, 71 F.3d at 166 (citing *Hudson*, 503 U.S. at 8-9).

Second, the inmate must show that, "*subjectively* 'the officials act[ed] with a

sufficiently culpable state of mind.'" *Strickler*, 989 F.2d at 1379 (quoting *Wilson*, 501 U.S. at 298). The subjective component is satisfied by a showing of deliberate indifference by prison officials. *See Wilson*, 501 U.S. at 303. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

A plaintiff seeking preliminary relief, as here, is required to demonstrate that he is likely to succeed on the merits, that he is likely to suffer irreparable injury in the absence of an injunction, that the balance of equities tips in his favor, and that injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an extraordinary remedy, never awarded as of right. *See Winter*, 555 U.S. at 24.

Based on the evidence currently before the court, I find that Keystone has not met his burden to demonstrate that he is likely to succeed on the merits of his civil rights claim or that he is likely to suffer irreparable injury in the absence of an injunction. While Keystone's Complaint claims that he was being denied adequate ventilation and that the air quality in C Building is poor, the evidence before the court is to the contrary. Jeffrey Bolling, HVAC Co-Manager at Red Onion, testified that his department is not responsible for cleaning the ventilation system, but for maintenance and repairs, as well as some installation. According to Bolling, the ventilation system filters are replaced, on average, every three months, and the four units assigned to the C Building are checked approximately once every couple

of weeks. Bolling testified that the ventilation system at Red Onion utilizes 20 to 25 percent fresh air and 75 to 80 percent recycled air, noting that most federal buildings utilize only 10 to 15 percent fresh air.  He stated that an air flow study conducted in June 2015 did not reveal any issues with the C Building.  Finally, Bolling stated that he had not noticed any odors in the C Building, nor had he heard other inmates complain of the air quality there.

Additionally, Red Onion Nurse Shannon Woods testified that Keystone's medical records from January 2015 up until the date of the hearing do not reflect a diagnosis of COPD. Instead, she stated, his records included more sinus-type complaints.  During doctor visits in 2015, he complained only of hemorrhoids, a "spot" on his arm, a fish allergy, sinus issues, constipation, elbow pain, an ear infection and dry eyes.  In 2016, Keystone complained of painful urination, constipation, sinus-related issues, knee pain, a fish allergy and vitamin deficiencies. According to Woods, none of these treatment notes reflect any complaints of health problems due to poor air quality or inadequate ventilation.  At his most recent doctor visit on June 7, 2016, Keystone did not complain of any respiratory problems or other issues related to inadequate ventilation. Nurse Woods further testified that she was unaware of any complaints from Keystone of suffering respiratory problems, and she testified that she was unaware of any other inmates complaining of "bad air" at Red Onion.

Moreover, Amee Duncan, current Unit Manager of the C Building, testified that Keystone complained to her of the ventilation system only after it was cleaned on June 11-12, 2016, and his complaint was that it was not cleaned adequately, as trash had been left in the vents.  He did not complain to her of the ventilation system making him ill or exacerbating any preexisting health conditions.  She

stated that, if feces is detected in a cell or in a vent, it will be cleaned immediately, either by the offending inmate or by other specially trained inmates. According to Duncan, there are a certain number of special cells reserved for inmates known to smear or otherwise spread fecal matter, and Bolling testified that these cells are vented directly to the outside. Duncan testified that prior to becoming Unit Manager, she was Keystone's counselor in the C Building. She stated that she never observed him being short of breath, and she knew that he exercised. Additionally, she reported that Keystone had never made her aware of any health concerns, and no other inmates had complained to her concerning the ventilation system. Finally, Duncan testified that she, personally, had worked in the C Building for two and a half years, and she did not think there was any problem with the air there.

Further, Keystone conceded at the hearing that he could participate in a re-entry program, which would move him out of C Building entirely and into D Building. However, Keystone testified that he did not wish to move, citing increased interaction with canines and double celling. He further conceded that, despite his claims of poor ventilation, he had not taken the opportunity to participate in outside recreation in approximately six months because it was too much of a hassle.

Based on this evidence, I find that Keystone would not be able to demonstrate that the defendants were deliberately indifferent to a serious risk of harm to him because, essentially, he has not presented evidence that there was a serious risk of harm. Thus, I find that Keystone is not likely to succeed on the merits of his claim. Nor has he shown that he is likely to suffer irreparable harm if the injunctive relief requested is not granted. Therefore, I find that Keystone has

failed to make a sufficient showing for the issuance of preliminary injunctive relief on this issue.

Keystone also seeks injunctive relief in relation to his claims of retaliation by the defendants. However, at the July 7 hearing, he produced absolutely no evidence in support of this claim. That being the case, I cannot find that the issuance of preliminary injunctive relief is appropriate on this issue.

The court further notes that, even if a grant of preliminary relief was warranted, Keystone has not shown that the issuance of preliminary injunctive relief is appropriate against these named defendants. Specifically, Mr. Day now is deceased, as is A. Taylor. Lee Taylor has been substituted for A. Taylor, but Bolling testified that he and his department, of which Lee Taylor is a co-manager, are not tasked with cleaning the ductwork. W. Swiney no longer is the Unit Manager of the C Building, and S. Franklin now is a Captain and not assigned to any particular building. The current C Building Unit Manager testified that, in her capacity as Unit Manager, she was not responsible for overseeing the maintenance of the ventilation system and that, while she was authorized to move inmates to different cells within the C Building, she could not move them to another building. Testimony was offered that Regional Administrator Hinkle does not have the authority to order repairs to the ventilation system, and Warden Mathena no longer is the Warden at Red Onion.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Keystone has failed to show that the defendants have denied him adequate ventilation;
2. Keystone has failed to show that he is at risk of serious harm;
3. Keystone has failed to show that he is likely to succeed on his claim that the defendants have been deliberately indifferent to a risk of serious harm;
4. Keystone has failed to show that he is likely to suffer irreparable injury without a preliminary injunction;
5. Keystone has failed to provide the court with any evidence on his claim that the defendants retaliated against him for filing his lawsuit; and
6. Keystone has failed to show that preliminary injunctive relief is appropriate as it relates to this issue or to these defendants.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend the court deny Keystone's Motions requesting preliminary injunctive relief.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed

> finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: August 12, 2016.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE